# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# Norfolk Division



**ATLANTIC DIVING SUPPLY, INC.,**

    Plaintiff,

v.                                        Civil Action No.: 2:10cv503

**BANCROFT GLOBAL DEVELOPMENT,**

    Defendant.

## COMPLAINT

Plaintiff, Atlantic Diving Supply, Inc. ("ADS") alleges that the defendant, Bancroft Global Development ("Bancroft") has accepted more than $1,000,000.00 worth of goods, namely tactical and operational equipment, provided by ADS in accordance with a deal made between the two. Bancroft has refused to tender full payment to ADS for the received goods received. Accordingly, ADS makes the following allegations in support of its cause of action for breach of contract, pursuant to Article II of the Uniform Commercial Code, as adopted in Virginia. See Va. Code § 8.2, et seq.

### Jurisdiction and Venue

1. Subject matter jurisdiction is proper in this court, pursuant to 28 U.S.C. § 1332(c)(1), as the plaintiff and defendant are citizens of different states, and the amount in controversy is greater than $75,000.00.

2. Venue is proper in this court, pursuant to 28 U.S.C. § 1391(a)(2).

## Parties

3. Plaintiff ADS, Inc. is a Virginia corporation, with its principal place of business at 621 Lynnhaven Parkway, Suite 400, Virginia Beach, VA 23452. ADS specializes in providing tactical and operational equipment, logistics, and training primarily to the United States government, its various agencies, and defense and security contractors acting in support of the United States government.

4. Defendant Bancroft Global Development is a 501(c)(3) non-profit corporation organized under the laws of the District of Columbia, with its principal place of business at 2507 Massachusetts Avenue, NW, Washington, DC 20008-2823. Bancroft provides equipment and training to soldiers and peacekeepers around the world, including training on the removal of landmines and training the Ugandan Army.

5. Bancroft has an affiliate organization, African Skies Limited, organized under the laws of the Republic of Uganda and doing business in the Republic of Uganda. African Skies Limited is not a party to this litigation.

## Factual Allegations

6. Beginning on or about March 18, 2010, ADS and Bancroft began negotiating a deal for the purchase and delivery of various items, namely battle dress uniforms (BDUs), which includes BDU tops and pants, boots, field jackets, t-shirts, and pistol belts (collectively "the Items").

7. Bancroft ordered these Items from ADS in order to fulfill a purchase order between Dyncorp International, LLC ("Dyncorp"), a contractor for the United States government, and Bancroft's Ugandan affiliate, African Skies Limited.

8. During the negotiations, on or about March 21, 2010, ADS sent a price quote to Bancroft ("Quote") for the Items they had discussed. *See* Exhibit A.

9. On or about March 26, 2010, Bancroft sent a signed Purchase Order ("PO") to ADS for certain quantities of the Items listed in the Quote. *See* Exhibit B.

10. Ultimately, the parties formed a deal whereby ADS would provide Bancroft approximately 18,000 pairs of boots, 24,000 T-Shirts, 18,000 BDUs, 6,000 field jackets, and 6,000 pistol belts within a commercially reasonable period of time. Bancroft insisted on picking up the Items from the various vendor locations, instead of having ADS ship them; accordingly, ADS's was obligated only to make the Items available for pick up by Bancroft. Bancroft agreed to make a prepayment of 25% of the total price, a second payment of 25% of the total price, and a final payment of 50% of the total price. Bancroft agreed to make the final payment not later than thirty days from the final date of pick up and acceptance of the Items by Bancroft (the "Deal").

11. Bancroft began to perform its obligations by making a prepayment of $359,528.55 to ADS on March 29, 2010. ADS began performing pursuant to the Deal on or before April 6, 2010 by procuring the Items Bancroft ordered from ADS's vendors.

12. On or about April 13, 2010, ADS provided for pick up by Bancroft 6,125 BDU tops, 10,150 BDU pants, 1,035 field jackets, and 1,185 pistol belts ("April 13 Order").

13. Bancroft ultimately rejected 215 pistol belts ("First Set of Rejected Belts") from the April 13 Order.

14. ADS replaced the First Set of Rejected Belts (the "First Set of Replacement Belts") on or about June 14, 2010 ("First June 14 Exchange Order").

15. Bancroft fully accepted the April 13 Order and the First June 14 Exchange Order, including the First Set of Replacement Belts.

16. On or about April 26, 2010, ADS provided for pick up by Bancroft 6,600 pairs of Boots, 1,410 field jackets, 24,000 T-shirts, and 4,515 pistol belts ("April 26 Order").

17. Bancroft ultimately rejected 1900 pistol belts ("Second Set of Rejected Belts") from the April 26 Order.

18. ADS replaced the Second Set of Rejected Belts ("Second Set of Replacement Belts") on or about June 14, 2010 ("Second June 14 Exchange Order").

19. Bancroft fully accepted the April 26 Order and the Second June 14 Exchange Order, including the Second Set of Replacement Belts.

20. On or about April 30, 2010, ADS provided for pick up by Bancroft 6,442 BDU tops and 5,870 BDU pants ("April 30 Order").

21. Bancroft fully accepted the April 30 Order.

22. On May 5, 2010, Bancroft made the second payment of $360,000.00 to ADS, approximately thirty days following the April 13 Order.

23. On or about May 12, 2010, ADS provided for pick up by Bancroft 3,037 BDU tops and 896 BDU pants ("May 12 Order").

24. Bancroft fully accepted the May 12 Order.

25. On or about May 13, 2010, ADS provided for pick up by Bancroft the remaining 11,400 pairs of boots, completing that order ("May 13 Order").

26. Bancroft fully accepted the May 13 Order.

27. On May 17, 2010, Bancroft reaffirmed its obligation to make a final payment for the remainder of the Items not later than thirty days after delivery and full acceptance of the Items. *See* Exhibit C.

28. On or about June 2, 2010, ADS provided for pick up by Bancroft the remaining 3,555 field jackets, completing that order ("June 2 Order").

29. Bancroft did not pick up the June 2 Order until July 7, 2010.

30. Bancroft fully accepted the June 2 Order.

31. On or about June 7, 2010, ADS provided for pick up by Bancroft 1,564 BDU tops and 1,230 BDU pants ("June 7 Order").

32. Bancroft fully accepted the June 7 Order.

33. On or about June 17, 2010, ADS provided for pick up by Bancroft 647 BDU tops and 15 BDU pants ("June 17 Order").

34. Bancroft ultimately rejected the June 17 Order ("Rejected BDUs").

35. ADS replaced the BDUs in the June 17 Order ("Replacement BDUs") on or about June 28, 2010 ("June 28 Exchange Order").

36. Bancroft fully accepted the June 28 Exchange Order.

37. On or about June 28, 2010, ADS provided for pick up by Bancroft the remaining 747 pistol belts, completing that order ("June 28 Order").

38. Bancroft fully accepted the June 28 Order.

39. On or about July 9, 2010, ADS provided for pick up by Bancroft 174 BDU tops and 244 BDU pants, completing that order ("July 9 Order").

40. Bancroft fully accepted the July 9 Order.

41.  On or before July 9, 2010, ADS fulfilled its obligations under the Deal and provided all the Items to Bancroft.

42.  In addition to fully accepting the Items, upon information and belief, Bancroft used the Items to satisfactorily complete its obligations to Dyncorp and/or African Skies.

43.  Pursuant to the terms of the Deal, and, specifically, Bancroft's reaffirmance of the Deal as detailed in Exhibit C, payment in the amount of $831,264.55 was due on or about August 6, 2010, approximately 30 days following the date on which Bancroft received and accepted the balance of its order.

44.  Despite having accepted the Items, Bancroft refused to submit its final payment.

45.  Moreover, Bancroft has not returned to ADS the First Set of Rejected Belts, the Second Set of Rejected Belts, and the Rejected BDUs (collectively, the "Rejected Items"), which are worth $27,262.14.

## Count I - Breach of Contract

46.  The plaintiff incorporates its allegations in paragraphs 1-45 as if fully repeated herein.

47.  As the agreement in this case is a transaction in goods, Article II of the Uniform Commercial Code, as adopted in Virginia, applies. *See* Va. Code § 8.2-101, et seq.

48.  ADS and Bancroft agreed to a transaction in goods whereby ADS would provide tactical and operational equipment to Bancroft in exchange for payment. *See* Va. Code § 8.2-204-206.

49.  By entering into the Deal, ADS was obligated to transfer the Items to Bancroft, and Bancroft was obligated to accept and make payment for the Items in accordance with the terms of the Deal. Va. Code § 8.2-301.

50. ADS fully performed its obligations under the Deal by tendering the Items to Bancroft in the manner, time, and place required by the terms of the Deal, pursuant to Va. Code § 8.2-503.

51. ADS provided the Items within a commercially reasonable time, pursuant to Va. Code § 8.2-309, -311.

52. ADS's tender of the Items entitles ADS to acceptance of the Items and to payment according to the Deal. Va. Code § 8.2-507(1).

53. Bancroft fully accepted the Items, including the First Set of Replacement Belts, the Second Set of Replacement Belts, and the Replacement BDUs, and used the Items to fulfill their obligations to Dyncorp International, LLC. *See* Va. Code § 8.2-606.

54. Bancroft must pay the amount owed per the terms of the Deal for the Items. Va. Code § 8.2-607.

55. Bancroft failed to meet its obligations to make payment according to the terms of the Deal, which required that Bancroft make its final payment not later than thirty days following the final delivery and full acceptance of the Items.

56. That date has passed without Bancroft living up to its obligations under the Deal, in violation of Va. Code § 8.2-301, and has improperly denied ADS the performance to which it is entitled, in violation of Va. Code § 8.2-507(1).

### Count II – Conversion

57. The plaintiff incorporates its allegations in paragraphs 1-56 as if fully repeated herein.

58. ADS has the right to possess the Rejected Items, as seller of those Rejected Items, pursuant to Va. Code § 8.2-602(2).

59. In retaining possession of the Rejected Items, Bancroft has wrongfully exercised ownership, dominion, and control over the Rejected Items as against ADS. Va. Code § 8.2-602(2).

60. ADS has demanded that Bancroft return the Rejected Items or submit payment for the Rejected Items.

61. Bancroft has refused to return the Rejected Items or to submit payment for the Rejected Items.

62. Accordingly, Bancroft has denied ADS its ownership rights in the Rejected Items and has, thus, converted ADS's property.

63. ADS demands full payment for the Rejected Items in the amount of $27,262.14.

### Prayer for Relief

WHEREFORE, ADS has been damaged in the amount $858,526.69, which includes the amount currently due by the terms of the Deal and the value of the Rejected Items that Bancroft has failed to return to ADS. ADS requests that this Court enter an Order awarding ADS:

1. The full amount owed under the terms of the Deal, pursuant to Va. Code § 8.2-709, in the amount of $831,264.55;

2. The full value of the Rejected Items in the amount of $27,262.14;

3. Pre- and post-judgment interest on any monetary award;

4. Any incidental damages which ADS proves at trial or during discovery, pursuant to Va. Code § 8.2-710;

5. Any further relief that the Court finds appropriate in this case.

ATLANTIC DIVING SUPPLY, INC.

By: /s/
Adam Casagrande (VSB No. 46726)
acasagrande@williamsmullen.com
Stephen E. Anthony (VSB No. 78246)
santhony@williamsmullen.com
WILLIAMS MULLEN
999 Waterside Drive, Suite 1700
Norfolk, VA 23510
Telephone: 757-622-3366
Facsimile: 757-629-0660

7810588_4.DOC